UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| BANCORPSOUTH BANK, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 4:11CV9 HEA |
|  | ) |  |
| ENVIRONMENTAL OPERATIONS, | ) |  |
| INC., et al., | ) |  |
|  | ) |  |
| Defendants, | ) |  |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant The Clayton Engineering Co.'s Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for More Definite Statement, [Doc. No. 20]; Defendant Geotechnology, Inc.'s Motion to Dismiss Counts III, IV and VI, [Doc. No. 24], and Defendant Environmental Operations, Inc.'s Motion to Dismiss Counts III, IV and VI, [Doc. No. 26]. Plaintiff opposes all of these motions. For the reasons set forth below, the motions are

## Facts and Background

Plaintiff, a Mississippi state bank and successor by merger to The Signature Bank, alleges that Environmental Operations Inc., (EOI), Geotechnology, Inc.,

(Geotech) and The Clayton Engineering Company, Inc., (Clayton) prepared and implemented an environmental remediation plan affecting property known as the Hazelwood Logistics Center, in which, Plaintiff holds an interest. Plaintiff claims that Defendants failed to completely remediate the site for the purpose of assisting the developer and lender with future redevelopment. Count I is a claim brought against all defendants for cost recovery and declaratory relief, alleging a violation of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA); Count II alleges breach of Contract against EOI; Count III alleges negligent misrepresentation brought against EOI and Geotech; Count IV alleges strict products liability for construction of an engineered cell and is brought against all defendants; Count V alleges negligence as to all defendants; and Count VI alleges strict products liability for placement of screened fines against EOI and Geotech.

Plaintiff alleges that it is the successor in interest to a bank that lent money to Hazelwood Logistics Center, LLC. It further alleges that Defendants were the remediation designers and contractors for the site. According to Plaintiff, Defendants failed to properly design and carry out construction of an engineered cell on the site, which was a layer of clay dirt put in place to contain old landfill materials, and to adequately screen materials or "fines" from the dirt on the site

prior to that dirt being spread around the site as fill.

## Discussion

### Standard of Review

When ruling on a motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) and then *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated by *Twombly*, supra); see also *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009). While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. *Twombly*, 550 U.S. at 555; accord *Iqbal*, 129 S.Ct. at 1949. The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1949; *C.N. v. Willmar Pub.*

*Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir.2010); *Zutz v. Nelson,* 601 F.3d 842, 848 (8th Cir. 2010); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If the claims are only conceivable, not plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1950. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

**Count I-CERCLA**

Defendant Clayton moves to dismiss Count I for failure to comply with Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Count I is brought under the provisions of 42 U.S.C. §§ 9601-9675, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).

In 1980, Congress enacted [CERCLA] in response to the serious

environmental and health risks posed by industrial pollution. See *United States v. Bestfoods,* 524 U.S. 51, 55, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). The Act was designed to promote the "'timely cleanup of hazardous waste sites'" and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination. *Consolidated Edison Co. of N.Y. v. UGI Util., Inc.,* 423 F.3d 90, 94 (C.A.2 2005); see also *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (C.A.1 1986). These cases raise the questions whether and to what extent a party associated with a contaminated site may be held responsible for the full costs of remediation.

*Burlington Northern and Santa Fe Ry. Co. v. U.S.*, ___ U.S. ___, 129 S.Ct. 1870, 1874 (2009).

Clayton argues that the Complaint fails to sufficiently set forth that it is an "operator" of a facility or a "generator/arranger" of hazardous wastes. Section 9607(a) sets out the classes of persons potentially responsible under CERCLA:

(1) the owner and operator of a vessel or a facility,

(2) any person[1] who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for

---

[1] For purposes of the statute, a "person" is defined as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

- 5 -

disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ...."

42 U.S.C. § 9607(a).

Clayton argues that the Complaint fails to allege facts sufficient to establish liability. While recognizing that CERCLA requires Plaintiff to establish that Clayton was an "operator" or "generator/arranger" of hazardous waste, Clayton claims that it had neither actual control nor the authority to control any of the environmental operations of the subject property.

Contrary to its argument, however, the Complaint alleges that all Defendants knew, since at least 2001, that there were disposed hazardous materials on the property. Plaintiff further alleges that Defendants engaged in deliberate disturbance, unearthing, spilling, moving and re-releasing all of the enumerated hazardous materials and compounds into the property. Although the Complaint does not specifically list each Defendant by name in its CERCLA Count, it alleges that all defendants engaged in the activities such that Defendant

Clayton is put on notice that Plaintiff seeks recovery from Clayton for its involvement in the disturbance, etc. of hazardous materials on the property.

> Liability for the release of hazardous substances may be imposed on ""any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.'" *Gurley*, 43 F.3d at 1192 (quoting 42 U.S.C. § 9607(a)(2)). When considering an individual's liability as an operator, "'[i]t is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme.'" *Id*. (quoting *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 743 (8th Cir.1986)).

*K.C.1986 Ltd. Partnership v. Reade Mfg*., 472 F.3d 1009, 1020 (8th Cir. 2007).

While discovery may reveal that Clayton had no authority to control the handling of the hazardous material on the property, the issue before the Court at this stage is whether the Complaint sufficiently alleges control.[2] Under the standards articulated herein, the Court concludes that the Complaint meets the *Twombly* and *Iqbal* standards of alleging facts sufficient to place Clayton on notice of the CERCLA claim against it.

**Count III-Negligent Misrepresentation against EOI and Geotech**

Plaintiff has styled Count III as a negligent misrepresentation claim against EOI and Geotech. Defendants argue that it is, in reality, a claim for negligent

---

[2] Clayton's reliance on *The City of North Miami, Florida v. Morris Berger*, 828 F.Supp. 401 (E.D. Va 1993) is, at best, premature. The matter was before the Virginia District Court on summary judgment.

omission.

> The elements of negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo.2010)(citing *Dancin Development, L.L.C. v. NRT Missouri, Inc*., 291 S.W.3d 739, 744 (Mo.Ct.App.2009)). "A party must prove every element of a claim for negligent misrepresentation for the claim to succeed." *Id.*

As the basis for its negligent misrepresentation claim, Plaintiff alleges that Defendants EOI and Geotech issued studies that omitted the identification of landfill areas later discovered, did not report various methane-related items, failed to apprise recipients about various methane-related items, and made no provision of the accumulation of methane gas.

Defendants argue that Plaintiff fails to state a claim because Plaintiff has failed to allege any misrepresentations, rather, Defendants argue that Plaintiff has restated its breach of contract and negligence claims, focusing on actions and failures, *i.e.*, failure to evaluate the potential impact of biodegration of former

landfill materials, failure to list methane gas as a contaminant of concern, failure to obtain a "Letter of Completion."  In the instant matter, the Court finds that the Complaint fails to sufficiently set forth any facts to support any representations allegedly made by Defendants EOI and Geotech to Plaintiff that were false. Plaintiff merely recites the elements of a claim for negligent misrepresentation and concludes that "due to Defendants' failure to exercise reasonable care, the information provided in the Information and Reports were false and incomplete. Such allegations, under *Twombly* and *Iqbal*, are insufficient to state a claim.

**Count IV and VI-Strict Products Liability**

Plaintiff alleges that each Defendant sold products, to wit, an engineered containment cell, to hold contaminated and hazardous materials and remediated screened fines derived from contaminated material removed from the property,  in the ordinary and normal course of business.  Based on these allegations, Plaintiff seeks to hold Defendants strictly liable for the alleged leaking and spreading of contaminated material.

In 1969, the Missouri Supreme Court adopted the rule of strict liability in tort, as stated in Restatement (Second) of Torts § 402A:

> (1) One who sells any product in a defective condition unreasonably
> dangerous to the user or consumer or to his property is subject to
> liability for physical harm thereby caused to the ultimate user or

consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Rest.2d Torts § 402A; see *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo.1969) (adopting Restatement). In adopting the rule of strict liability for tort, the Missouri Supreme Court pointed out that such a rule would help insure the costs of injuries arising from defective products will be borne by the manufacturers and sellers that put the products into the marketplace, rather than by the injured persons. *Keener*, 445 S.W.2d at 364. Under § 402A, strict liability rule "applies to any person engaged in the business of selling products for use or consumption." Rest.2d Torts § 402A, cmt. f; see also *Keener*, 445 S.W.2d at 365 (quoting from Rest.2d Torts § 402A, cmt. f.). For example, the rule "applies to any manufacturer of [a product described in § 402A], to any wholesale retail

dealer or distributor, and to the operator of a restaurant." Rest.2d Torts § 402A, cmt. f. "The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods." *Id.*

The issue before the Court is whether Defendants may be held liable as "sellers of a product" within the meaning of § 402A.[3] Defendants point to the Missouri case of *Chubb Group of Ins. Co. v. C.F. Murphy & Assoc., Inc.*, 656 S.W.2d 766 (Mo.Ct.App.1983), in which a Missouri appellate court addressed claims related to the collapse of the roof of the Kemper Arena in Kansas City, Missouri. In that case certain plaintiffs alleged that the defendants designed or manufactured the Arena, that it was in a defective condition unreasonably dangerous for any reasonably anticipated use, and that they had been damaged as a result of the defect. *Chubb*, 656 S.W.2d at 778. In recognizing that real property

---

[3] Neither Plaintiff nor Defendants cite to any Missouri case directly on point, and this Court has found none. Thus, in the absence of controlling authority, this Court undertakes to predict how the Missouri Supreme Court would rule if faced with the issue of whether Defendants are sellers within the meaning of § 402A. See *Pace Const. Co. v. Fidelity and Guar. Ins. Co.*, 934 F.2d 177, 179 (8th Cir.1991) (in absence of controlling authority, district court should predict how Missouri Supreme Court would rule).

was subject to special treatment under other sections of the Restatement, the court stated that "the applicability of strict liability depends not on an arbitrary line of division between chattel and real property, but on a consideration of whether the policy behind such liability is applicable to the facts." *Chubb*, 656 S.W.2d at 779.

The court determined that "[t]he underlying consumer protection principles of strict liability simply do not appear to be applicable to the constructors of a large commercial building built for a particular client presumably under contract with that client." *Chubb*, 656 S.W.2d at 780. The court found that plaintiffs had no cause of action for products liability against the architect and construction supervisor, the general contractor, or the consulting structural engineers. *Chubb*, 656 S.W.2d at 781. In contrast, the court did determine that a cause of action could lie against the provider of the steel bolts used to secure the roof's supports and the provider of the steel beams, which, if defective, may have been "products" within the meaning of § 402A. *Chubb*, 656 S.W.2d at 781. The court emphasized that these two entities could be held to the standards of strict liability "as suppliers of products incorporated into the structure." *Volume Services, Inc. v. C.F. Murphy & Assoc., Inc.*, 656 S.W.2d 785, 793 (Mo.Ct.App.1983).

None of the Defendants were sellers of a product within the meaning of § 402A. Defendants may have provided the engineered cell and screened fines,

however, these specifically designed items were incident to the services provided by defendants in order to complete their obligations to Plaintiff to prepare and implement an environmental remediation plan.  See *Hinojasa v. Automatic Elevator Co.*, 92 Ill.App.3d 351, 48 Ill.Dec. 150, 416 N.E.2d 45, 48 (Ill.App.Ct.1980) (policy reasons justifying strict liability are not applicable to product installers; one who simply installs a product "is not involved in the sale of the product and therefore receives no profit from placing the defective product in the stream of commerce" and "fact that an installer lacks the purchasing power of a retailer or a distributor makes it less able to exert pressure upon manufacturers to enhance product safety").

The Court concludes that, under Missouri law, Defendants cannot be held strictly liable for the damage caused by the "defective" engineered cell and or screened fines put in place on the property.  None of the Defendants were acting as a seller, manufacturer, wholesaler, or distributor of a product.  Here, it appears clear that the Missouri Supreme Court would refuse to impose liability.  In fact, imposing strict liability on Defendants would not effectuate the Missouri Supreme Court's policy that strict liability should be used to insure that the costs of injuries arising from defective products will be borne by manufacturers and sellers of those products.  The underlying consumer protection principles of strict liability do not

appear to apply to a general contractor whose subcontractor installed a defective product. See *Chubb*, 656 S.W.2d at 780 (consumer protection principles do not apply to constructors of commercial building built for particular client). Plaintiff cites no case in which a court has extended the principles of strict liability to facts such as those presented here, and the Court concludes that the Missouri Supreme Court would decline to so extend the cause of action. See *Hunt v. Guar. Elec. Co. of St. Louis*, 667 S.W.2d 9, 12 (Mo.Ct.App.1984) (where evidence showed only that defendant installed an automatic timer pursuant to its contract to provide the services of electricians, policy reasons justifying imposition of strict tort liability not present because defendant merely rendering professional services); *Hinojasa*, 48 Ill.Dec. 150, 416 N.E.2d at 48 (declining to extend doctrine to situation where defendant merely installed a product supplied by another). Thus, because Defendants cannot be held strictly liable for the damage caused by the engineered cell and or the screened fines, the claim made against them necessarily fails. Therefore, Defendants' Motions to Dismiss Count IV are granted.

**Count V-Negligence**

Defendant Clayton seeks to dismiss Count V for failure to state a claim for negligence against it.

"A negligence claim requires proof of a duty, the breach thereof, and

proximately caused damages." *Sandage v. Bankhead Enters., Inc.*, 177 F.3d 670, 675 (8th Cir.1999) (citation omitted). Plaintiff alleges that all defendants had a duty to adhere to a standard of reasonable care during the environmental remediation of the property. Plaintiff further alleges that Defendants were negligent in preparing the Remedial Action Plan, executing it, in the design and construction of an engineered cell performing the remediation activities as they relate to the cleanup of the Landfill Site and Property. Further, Plaintiff alleges, in its general allegations, and in the exhibits attached to the Complaint that Clayton participated in the preparation of the remedial action plan. The Court finds that these facts satisfy the standard set forth in *Twombly* and *Iqbal* in that they raise a reasonable expectation that discovery will reveal evidence of Plaintiff's negligence claim. *Twombly*, 550 U.S. at 556. The Court will therefore deny Defendant Clayton's Motion to Dismiss the negligence claim.

## Conclusion

Plaintiff's Complaint sufficiently alleges a CERCLA claim and negligence claim against Defendant Clayton. The motion to dismiss these claims will be denied. As to the strict liability claims and the negligent misrepresentation claims, the motions to dismiss are well taken and will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant The Clayton Engineering Co.'s Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for More Definite Statement, [Doc. No. 20], is granted in part and denied in part;

**IT IS FURTHER ORDERED** that Defendant Geotechnology, Inc.'s Motion to Dismiss Counts III, IV and VI, [Doc. No. 24], is granted;

**IT IS FURTHER ORDERED** that Defendant Environmental Operations, Inc.'s Motion to Dismiss Counts III, IV and VI, [Doc. No. 26], is granted.

**IT IS FURTHER ORDERED** that Counts III, IV and VI are dismissed.

Dated this 30th day of September, 2011.

_____
   HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE