UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BANCORPSOUTH BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:11CV9 HEA |
| | ) | |
| ENVIRONMENTAL OPERATIONS, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Dismiss Counts I, II,

III, IV, and VII of the Counterclaim filed by Environmental Operations, Inc.,

(EOI), [Doc. No. 62]; Plaintiff's Motion to Dismiss Counts V and VI of the

Counterclaim filed by EOI, [Doc. No. 63]; Defendant Geotechnology, Inc.'s

Motion to Dismiss Counts I and II of EOI's Cross claim, [Doc. No. 65]; Defendant

The Clayton Engineering Company's Motion to Dismiss Counts I and II of EOI's

Cross claim, [Doc. No. 66].  EOI opposes the motions.  For the reasons set forth

below, the motions are denied.

## Facts and Background

As set forth in the Court's previous Opinion, Memorandum and Orders,

Plaintiff, a Mississippi state bank and successor by merger to The Signature Bank, alleges that Environmental Operations Inc., (EOI), Geotechnology, Inc., (Geotech) and The Clayton Engineering Company, Inc., (Clayton) prepared and implemented an environmental remediation plan affecting property known as the Hazelwood Logistics Center, in which, Plaintiff holds an interest.  Plaintiff claims that Defendants failed to completely remediate the site for the purpose of assisting the developer and lender with future redevelopment.   EOI has brought a counterclaim against Plaintiff and cross-claims against Co-Defendants Geotechnology, Inc. and The Clayton Engineering Company, Inc.

Plaintiff alleges that it is the successor in interest to a bank that lent money to Hazelwood Logistics Center, LLC.  It further alleges that Defendants were the remediation designers and contractors for the site.  According to Plaintiff, Defendants failed to properly design and carry out construction of an engineered cell on the site, which was a layer of clay dirt put in place to contain old landfill materials, and to adequately screen materials or "fines" from the dirt on the site prior to that dirt being spread around the site as fill.

EOI alleges in its counterclaim that if Plaintiff is correct that it, Plaintiff, is the real party in interest to an Environmental Services Agreement between EOI and Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics, Plaintiff is

obligated to pay EOI for the work performed under the Environmental Services Agreement.  EOI has brought claims against Plaintiff for: breach of contract, quantum merit, unjust enrichment, action on account, violation of the Private Prompt Payment Act, CERCLA contribution, and contribution and indemnity under Missouri Law.

With respect to the cross claims, EOI alleges that these co-defendants are responsible for CERCLA contribution and contribution and indemnity under Missouri Law. EOI also claims Geotechnology is liable to it for breach of contract.

 On June 8, 2006, Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics and EOI entered into an Agreement Between Developer and Contractor ("Environmental Services Agreement").  EOI agreed to perform a Remedial Action Plan dated February 1, 2006.  That same day, Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics, EOI, and The Signature Bank n/k/a Bancorp entered into a Collateral Assignment of Environmental Services Agreement and Consent of Contractor (the "Collateral Assignment") in which, The Signature Bank, as lender, was granted an assignment and security interest in the Environmental Services Agreement.

On June 19, 2007, EOI and Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics entered into Change Order No. 1 to the Environmental

- 3 -

Services Agreement, whereby the parties agreed that 80,000 cubic yards of additional trash would be removed from the Property in exchange for an increase in the contract price by $738,550.00.

On November 9, 2009, EOI and Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics entered into Change Order No. 2 to the Environmental Services Agreement, whereby the parties agreed that EOI would conduct methane gas investigation activities at the Property in exchange for an increase in the contract price by $310,090.99.

On or about January 26, 2010, March 18, 2010, April 21, 2010, May 19, 2010, June 25, 2010, July 31, 2010, September 10, 2010, October 18, 2010, and November 1, 2010, EOI sent invoices to Hazelwood Logistics totaling $309,178.15 for its methane gas investigation work pursuant to Change Order No. 2.

EOI claims that if Plaintiff is correct that it is the real party in interest to the Environmental Services Agreement as a result of the express terms of the Collateral Assignment, it is obligated to pay EOI for its work performed under the Environmental Services Agreement, as amended, including Change Order No. 2.

EOI contends that if there has been a release of hazardous waste on the property, CERCLA clean up responsibility exists as well.

According to EOI's counterclaim, Plaintiff and/or Hazelwood Logistics was obligated under Change Order No. 2 to the Environmental Services Agreement to pay EOI in the amount of $309,178.15 after EOI performed the agreed upon methane gas investigation work it complete the methane investigation work as set forth in Change Order No. 2 in a good and workmanlike manner, and that Plaintiff, to the extent it is the real party in interest by virtue of the alleged assignment, breached the obligation under the Environmental Services Agreement by failing to pay EOI in the amount of $309,178.15.

With respect to EOI's quantum meruit claim, EOI alleges that it provided materials and services for the methane gas investigation on the Property, at the request of and/or with the acquiescence of Plaintiff, if it is adjudged to be the assignee of Hazelwood Logistics and that Plaintiff has failed and refused to pay the reasonable value of the materials and labor provided by EOI.

Count III of the Counterclaim is styled "Unjust Enrichment" and alleges that Plaintiff, if the alleged assignment between it and Hazelwood Logistics is enforceable, was the real party in interest to the Property and the Environmental Services Agreement, as amended, and that in performing the methane gas investigation work at the Property, EOI has conferred a benefit in the amount of $309,178.15 on Plaintiff; Plaintiff has accepted the benefit of EOI's

work in the amount of $309,178.15, such that retention of that amount by Plaintiff and/or Hazelwood Logistics under the circumstances would be inequitable.

For its Action on Account claim, EOI alleges Plaintiff's alleged assignor, Hazelwood Logistics, requested methane gas investigation work from EOI for the Property.  EOI accepted said request and furnished methane gas investigation work on the Property from January 2010 through November 2010.  As of November 1, 2010, Plaintiff's account, as allegedly assigned to it by Hazelwood Logistics, was in arrears to EOI in the amount of $309,178.15.  EOI's charges to Plaintiff's alleged assignor, Hazelwood Logistics, between January 2010 and November 2010 were reasonable, as they were billed at the agreed upon rates. As a result, EOI has been damaged in the amount of $309,178.15.

EOI's Count V of its Counterclaim is styled Violation of the Private Prompt Payment Act and alleges that the Environmental Services Agreement, as amended, constitutes a valid and enforceable contract between EOI, Hazelwood Logistics, and, if the Collateral Assignment is enforceable, Plaintiff. EOI states that the contract calls for scheduled payments; Plaintiff was obligated under the Environmental Services Agreement and Change Order No. 2 to pay EOI the amount of $309,178.15 after its methane gas investigation work was completed.

Count VI of EOI's Counterclaim is brought against Plaintiff seeking

CERCLA contribution.  This Count alleges that Plaintiff alleges that the Defendants in the above-captioned action, including EOI, performed all remediation activities at the Property since November 13, 2001, including site investigation; limited environmental testing; authoring and performing a Remedial Action Plan; and conducting operations related to the alleged release or disposal of alleged hazardous substances at and from the Property; and making decisions concerning compliance with environmental regulations.  Plaintiff alleges that as a result of these alleged activities, the Defendants have been "operators" of the Property under Section 101(20) of CERCLA, 42 U.S.C. § 9601(2).  EOI denies Plaintiff's allegations against it. However, it claims that if the Court finds that EOI has been an "operator" of the Property, then Plaintiff has been an "owner" or "operator" of the Property.  Further, if the Court further finds that there has been a "release" or "threatened release" of "hazardous substances" from the Property, as alleged in the Complaint, then Plaintiff is a person who is liable pursuant to the provisions of Section 107 of CERCLA, 42 U.S.C. § 9607  If EOI is required to pay the costs of any removal or remedial action or of other response activities, then EOI will thereby incur "response" costs, including costs of "removal" or "remedial action" as those terms are defined in Section 101 of CERCLA, 42 U.S.C. § 9601.  Such costs would be both "necessary" and

"consistent" with the National Contingency Plan as defined in Section 101(31) of CERCLA, 42 U.S.C. § 9601(31). In such an event, Plaintiff as an owner and/or operator of the Property at the time of disposal of "hazardous substances," is liable to compensate EOI for any such response costs they may incur pursuant to the statutory contribution requirements of Section 113 of CERCLA, 42 U.S.C. § 9613.

For its contribution and indemnification claim under Missouri Law, EOI alleges that if Plaintiff establishes that the Property is damaged or in a condition for which remediation is required, or that Plaintiff has been damaged as a result of conditions at the Property, any such damage or condition was caused by the acts or omissions of Plaintiff or its predecessors, assignors, subcontractors, lessees, agents, or other parties for whose actions it is responsible. Plaintiff is liable to EOI for contribution and/or indemnity under Missouri law for any expenses, costs, damages, or expenditures, including attorneys' fees and other costs of litigation, incurred by or assessed against EOI.

EOI asserts Cross-Claim against Geotechnology, Inc. and The Clayton Engineering Company, Inc.  EOI claims that if the allegations of the Complaint are correct, Geotechnology and Clayton Engineering designed, performed, and/or constructed remediation activities and facilities at the Hazelwood Logistics Center.

- 8 -

EOI alleges that around February 2001, Geotechnology agreed to perform for St. Louis County, Missouri a Phase I environmental report of the Property and that on November 13, 2001, Geotechnology submitted a Phase I environmental report of the Property to St. Louis County that did not characterize the waste present at the Property's landfill site in terms of biodegradation and landfill gas generation potential. Around April 2002, Geotechnology agreed to perform for McEagle Development, a member of or related entity to Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics, a Phase II environmental sampling report. Between 2002 and 2004, Geotechnology submitted various environmental reports, pursuant to its agreement with McEagle Development, that did not characterize the waste present at the Property's landfill site in terms of biodegradation and landfill gas generation potential and further did not identify landfill areas later accidentally discovered during implementation of the recommended remedial action. Based upon Geotechnology's environmental reports generated between 2001 and 2004 for St. Louis County, McEagle Development, and/or Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics, Geotechnology drafted a Remedial Action Plan dated February 1, 2006. Pursuant to the Remedial Action Plan, Geotechnology Inc. proposed to excavate, screen, and place certain organic and other materials retrieved from a landfill site

- 9 -

on the Property within an onsite engineered cell.

According to those allegations, materials passing through screens of an approximately 6 inch diameter such as soil and organic matter would be transported to an onsite deep fill zone, compacted, and thereby reused across large portions of the Property while waste passing through the six-inch diameter screens was to be deposited into the onsite engineered cell.

EOI further alleges that between February and June 2006, pursuant to an agreement with Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics and/or its general contractor, Paric Corporation, Geotechnology designed an engineered cell that was to be a component part of the Remedial Action Plan for the Property.  Between February and June 2006, Geotechnology and Clayton Engineering entered into a separate subcontract, whereby Clayton Engineering agreed to provide certain design services and site characterization to assist Geotechnology in the design of the engineered cell that was to be a component part of the Remedial Action Plan for the Property.

On June 8, 2006, Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics and EOI entered into an Agreement Between Developer and Contractor ("Environmental Services Agreement"), whereby EOI agreed to perform the Remedial Action Plan dated February 1, 2006.  That same day, on June 8, 2006,

Hazelwood Commerce Center, LLC n/k/a Hazelwood Logistics, EOI, and The Signature Bank n/k/a Bancorp entered into a Collateral Assignment of Environmental Services Agreement and Consent of Contractor (the "Collateral Assignment") in which The Signature Bank, as lender, was granted an assignment and security interest in the Environmental Services Agreement.  To perform the Environmental Services Agreement, on or about September 1, 2006, EOI entered into an Agreement Between Contractor and Subcontractor with Geotechnology, wherein Geotechnology, among other things, agreed to: 1) perform a geotechnical investigation of the engineered cell area; 2) conduct engineered cell liner construction oversight; 3) conduct trash screening and closure sampling assistance, including the documentation of excavation and screening activities; 4) perform trash compaction and cell filling oversight; and 5) conduct engineered cell cap construction oversight.

EOI's cross claim continues, alleging that if Plaintiff's allegations are correct, the Property has or had illegally disposed materials, including asbestos, medical wastes, and leaking and empty drums that contained hazardous substances, such as, but not limited to, waste paints, thinners, lubricants and industrial cleaners, in the ground and groundwater, and methane gas generated from organic and other materials buried there. If proven, these disposed materials

and others at the Property include CERCLA "hazardous substances," including

chemical compounds classified as volatile organic compounds (VOCs), semi-

volatile organic compounds (SVOCs), metals, total petroleum hydrocarbons

(TPH), pesticides, and polychlorinated biphenyls (PCBs).

If Plaintiff's allegations are correct, EOI states that there has been a release

of hazardous substances at the Property, which have caused response costs to be

incurred consistent with the National Contingency Plan, such as investigatory and

other expense to try to understand, monitor and evaluate the conditions,

environmental releases and hazards at the Property.

EOI charges that if Plaintiff's allegations are correct, Geotechnology and

Clayton Engineering are liable and responsible for response costs incurred at the

Property to remediate hazardous substances due to Geotechnology's failure to

identify and address those hazardous substances in its various environmental

reports, Geotechnology's failure to adequately perform its subcontract work while

implementing the Remedial Action Plan, and Geotechnology's and Clayton

Engineering's combined failure to properly design the engineered cell, which was

to be a component part of the Remedial Action Plan.

EOI seeks CERCLA contribution from Geotechnology and Clayton

Engineering based on Plaintiff's allegations that Defendants, including

Geotechnology and Clayton Engineering, in the above-captioned action, performed all remediation activities at the Property since November 13, 2001, including site investigation; limited environmental testing; authoring and performing a Remedial Action Plan; and conducting operations related to the alleged release or disposal of alleged hazardous substances at and from the Property; and making decisions concerning compliance with environmental regulations.

Plaintiff alleges that as a result of these alleged activities, the Defendants, including Geotechnology and Clayton Engineering, have been "operators" of the Property under Section 101(20) of CERCLA, 42 U.S.C. § 9601(2). EOI denies Plaintiff's allegations against it. However, if the Court finds that EOI has been an "operator" of the Property, then Geotechnology and Clayton Engineering similarly are "operators" and/or "arrangers" with respect to the Property.

EOI contends that if the Court further finds that there has been a "release" or "threatened release" of "hazardous substances" from the Property, as alleged in the Complaint, then Geotechnology and Clayton Engineering are persons who are liable pursuant to the provisions of Section 107 of CERCLA, 42 U.S.C. § 9607 and if EOI is required to pay the costs of any removal or remedial action or of other response activities, then EOI will thereby incur "response" costs, including

costs of "removal" or "remedial action" as those terms are defined in Section 101

of CERCLA, 42 U.S.C. § 9601.  Such costs would be both "necessary" and

"consistent" with the National Contingency Plan as defined in Section 101(31) of

CERCLA, 42 U.S.C. § 9601(31).  In such an event, Geotechnology and Clayton

Engineering as operators and/or arrangers with respect to the Property at the time

of disposal of "hazardous substances," are liable to compensate EOI for any such

response costs they may incur pursuant to the statutory contribution requirements

of Section 113 of CERCLA, 42 U.S.C. § 9613.

The Cross claim also seeks contribution and indemnification under Missouri

Law in Count II and alleges that if Plaintiff establishes that the Property is

damaged or in a condition for which remediation is required, or that Plaintiff has

been damaged as a result of conditions at the Property, any such damage or

condition was caused by the acts or omissions of Geotechnology and Clayton

Engineering. As such, EOI claims Geotechnology and Clayton Engineering are

liable to EOI for contribution and/or indemnity under Missouri law.

Count III of the Cross claim is brought by EOI against Geotechnology for

an alleged breach of the Agreement Between Contractor and Subcontractor dated

September 1, 2006 constitutes a valid and enforceable contract between EOI and

Geotechnology.  Further, EOI contends that if Plaintiff's allegations are correct,

Geotechnology breached the Agreement by failing to perform the following tasks in accordance with the terms and conditions of that agreement and in a workmanlike manner from the date of the agreement through December 2007: 1) a geotechnical investigation of the engineered cell area; 2) engineered cell liner construction oversight; 3) trash screening and closure sampling assistance, including the documentation of excavation and screening activities; 4) trash compaction and cell filling oversight; and 5) engineered cell cap construction oversight.

Thus, the gravamen of the counterclaims and cross-claims is that if EOI is found to be liable to Plaintiff, Plaintiff and the Co-Defendants are responsible for breach of contract, CERCA liability and contribution.

### Discussion

### Standard of Review

When ruling on a motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).   The complaint must have "'a short and plain statement of the claim showing that the

[plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) and then *Conley v. Gibson*, 355 U.S. 41, 47 (1957), abrogated by *Twombly*, supra); see also *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009).  While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. *Twombly*, 550 U.S. at 555; accord *Iqbal*, 129 S.Ct. at 1949.  The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1949; *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir.2010); *Zutz v. Nelson,* 601 F.3d 842, 848 (8th Cir. 2010); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  If the claims are only conceivable, not plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1950.  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in

isolation, is plausible." *Braden*, 588 F.3d at 594.  The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

**Counterclaim Count I, II, III, IV, and VII**

Plaintiff argues that because EOI has filed a mechanic's lien action in St Louis County, EOI is barred from bringing an action in this Court.  Plaintiff contends the mechanic's lien case involves the claim raised by EOI in this action. Conversely, EOI argues that Plaintiff misunderstands the nature of its Counterclaims and its mechanic's lien suit.  EOI contends that validity the alleged assignment claimed by Plaintiff has yet to be decided and therefore, the motion to dismiss is premature.

EOI filed a mechanic's lien suit in the Circuit Court of St. Louis County against Hazelwood Logistics, an entity that is not a party to this suit, seeking to recover the amount allegedly owed EOI under the Environmental Services Agreement.  EOI contends that because Plaintiff is seeking to be determined as the real party in interest, Plaintiff is obligated to EOI for the amount Hazelwood has not paid to it.  EOI alleges that Plaintiff's attempt to avoid payment, particularly in light of the fact that there were written change orders and work performed after

Plaintiff became the alleged real party in interest, is premature and cannot be determined until there is a determination that Plaintiff is indeed the real party in interest.  As EOI correctly points out, a mechanic's lien is placed on the real estate itself.  Procedurally, EOI named Plaintiff in its mechanic's lien suit in an effort to protect any priority it may have in the real estate of which Plaintiff is claiming it is the real party in interest.  This action is for damages from Plaintiff in the event it is determined to be the real party in interest.

The Court agrees with EOI that it is premature at this stage to dismiss Counts I, II, III, IV, and VII of the Counterclaim.  Keeping in mind the purposes of Rule 12(b)(6), *i.e.*, to test the sufficiency of the Complaint, EOI's Counterclaim withstands challenge.  EOI has set forth the facts necessary for Plaintiff to ascertain what claim is being made against it.  Pleading in an "if/then" manner does not render the Counterclaim subject to dismissal.  Because Plaintiff claims in its Complaint that it is entitled to "real party in interest," status, EOI contends it is entitled to seek recovery under the Collateral Assignment of Environmental Services Agreement and Consent of Contractor of The Signature Bank.  Plaintiff also recognizes the change orders to EOI and Hazelwood Commerce Center LLC's contract.

**Count V**

For its Motion to Dismiss the Counterclaim, Plaintiff argues that EOI has

failed to sufficiently state a claim under the Missouri Private Prompt Payment Act.

The Missouri Private Prompt Payment Act, V.A.M.S. 431.180, provides:

431.180. *Contract for private design or construction work, scheduled
payments–action for failure to pay, interest--arbitration--application*

1. All persons who enter into a contract for private design or
construction work after August 28, 1995, shall make all scheduled
payments pursuant to the terms of the contract.

2. Any person who has not been paid in accordance with subsection 1
of this section may bring an action in a court of competent
jurisdiction against a person who has failed to pay. The court may in
addition to any other award for damages, award interest at the rate of
up to one and one- half percent per month from the date payment was due
pursuant to the terms of the contract, and reasonable attorney fees, to  the
prevailing party. If the parties elect to resolve the dispute by arbitration
pursuant to section 435.350, RSMo, the arbitrator may award any
remedy that a court is authorized to award hereunder.

3. The provisions of this section shall not apply to contracts for
private construction work for the building, improvement, repair
or remodeling of owner-occupied residential property of four units or less.

4. For purposes of this section, design or construction work shall
include design, construction, alteration, repair or maintenance of any
building, roadway or other structure or improvement to real
property, or demolition or excavation connected therewith, and shall
include the furnishing of surveying, architectural, engineering or
landscape design, planning or management services, labor or
materials, in connection with such work.

Plaintiff argues that EOI cannot state a claim under the Missouri  Private

Prompt Payment Act because Plaintiff contends it did not assume any liabilities under the Collateral Agreement, and therefore, it is not obligated to EOI for the payment due.  EOI, on the other hand, contends that because of the Change Orders, which occurred after Plaintiff allegedly became the real party in interest, Plaintiff is obligated to the amount owed to EOI for the work it performed.

Under the standards articulated in *Twombly* and *Iqbal*, EOI's counterclaim withstands challenge at this stage of the proceedings.  EOI has alleged an agreement with Hazelwood.  The alleged non-payment by Hazelwood occurred after the Collateral Agreement, and further that the change orders occurred after Plaintiff claims it was the real party in interest.

**Count VI and Counts I and II of the Cross-claims**

Count VI of the Counterclaim and Count I of the Cross-claim against Geotechnology, Inc. and Clayton Engineering Company, Inc. is brought under the provisions of 42 U.S.C. §§ 9601-9675, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), for contribution.

> In 1980, Congress enacted [CERCLA] in response to the serious
> environmental and health risks posed by industrial pollution. See
> *United States v. Bestfoods,* 524 U.S. 51, 55, 118 S.Ct. 1876, 141
> L.Ed.2d 43 (1998). The Act was designed to promote the  "'timely
> cleanup of hazardous waste sites'" and to ensure that the costs of such
> cleanup efforts were borne by those responsible for the
> contamination. *Consolidated Edison Co. of N.Y. v. UGI Util., Inc.,*

423 F.3d 90, 94 (C.A.2 2005); see also *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (C.A.1 1986). These cases raise the questions whether and to what extent a party associated with a contaminated site may be held responsible for the full costs of remediation.

*Burlington Northern and Santa Fe Ry. Co. v. U.S.,* ___ U.S. ___, 129 S.Ct. 1870, 1874 (2009).

Plaintiff and Defendants Geotechnology and Clayton argue that the Counterclaim and Cross-claim fail to sufficiently set forth that these entities are "operators" of a facility or "generators/arrangers" of hazardous wastes.  Section 9607(a) sets out the classes of persons potentially responsible under CERCLA:

(1) the owner and operator of a vessel or a facility,

(2) any person[1] who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

---

[1]  For purposes of the statute, a "person" is defined as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." 42 U.S.C. § 9601(21).

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ....”

42 U.S.C. § 9607(a).

Plaintiff and Cross-Defendants argue that EOI has failed to satisfy the pleading requirements of *Twombly* and *Iqbal*.

Two provisions of [CERCLA]—§§ 107(a) and 113(f)—allow private parties to recover expenses associated with cleaning up contaminated sites.” *United States v. Atl. Research Corp.,* 551 U.S. 128, 131, 127 S.Ct. 2331, 168 L.Ed.2d 28 (2007). Though complementary, “§§ 107(a) and 113(f) provide two ‘clearly distinct’ remedies,” *id.* at 138, 127 S.Ct. 2331, “to persons in different procedural circumstances,” *id.* at 139, 127 S.Ct. 2331 (quotation omitted). Section 107(a)(4)(B) permits a private party who has voluntarily incurred costs cleaning up a site for which it may be held liable to recover necessary response costs from another liable party through a direct recovery action. *See id.* at 133–34, 127 S.Ct. 2331, *aff’g Atl. Research Corp. v. United States,* 459 F.3d 827 (8th Cir.2006).

Section 113(f), enacted after § 107 as part of the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, 100 Stat. 1613 (1986), “authorizes one [potentially responsible party] to sue another for contribution in certain circumstances.” *Id.* at 132, 127 S.Ct. 2331. Section 113(f)(1) allows a person to seek contribution from any other person who is liable or potentially liable under § 107(a) during or following a civil action under §§ 106 or 107. Section 113(f)(3)(B) authorizes “[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement” to seek contribution from any person who has not so resolved its liability.

- 22 -

The term "contribution" has its traditional meaning of a "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *Atl. Research,* 551 U.S. at 138, 127 S.Ct. 2331 (quoting *Black's Law Dictionary* 353 (8th ed.2004)). The "right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties." *Id.* at 139, 127 S.Ct. 2331.

The right to contribution under § 113(f) is more limited than the right to recover costs under § 107(a). *See Atl. Research,* 459 F.3d at 832. A person seeking contribution under § 113(f) may be subject to the equitable allocation of response costs, *see* § 113(f)(1), and may not recover from previously settling parties, *see* § 113(f)(2). Such claims are also subordinate to the rights of the United States or a State, *see* § 113(f)(3)(C), and subject to a shorter limitation period than cost-recovery claims, *see* § 113(g)(2)-(3).

To ensure the continued vitality of the precise and limited right to contribution Congress set forth in § 113, we have held the right to bring a cost-recovery action under § 107 "is available to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107." *Atl. Research,* 459 F.3d at 835. "[L]iable parties which have been subject to §§ 106 or 107 enforcement actions are still required to use § 113." *Id.* at 836–37. *See also, Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,* 596 F.3d 112, 128 (2d Cir.2010) (holding that allowing a liable party whose claims fit § 113(f) "to proceed under § 107(a) would in effect nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 113"); *ITT Indus., Inc. v. BorgWarner, Inc.,* 506 F.3d 452, 458 (6th Cir.2007) ("To maintain the vitality of § 113(f), however, [potentially responsible parties] who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f).").

- 23 -

In affirming our decision in *Atlantic Research,* the Supreme Court noted the potential for overlap between §§ 107(a) and 113(f), but declined to decide whether a liable party sustaining expenses pursuant to a consent decree following a suit under §§ 106 or 107(a) could recover such compelled costs under § 107(a), § 113(f), or both. *Atl. Research,* 551 U.S. at 139 n. 6, 127 S.Ct. 2331. We necessarily reach that issue in these appeals, and hold that § 113(f) provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107. *See Atl. Research,* 459 F.3d at 830 n. 4 (explaining our holding in *Dico, Inc. v. Amoco Oil Co.,* 340 F.3d 525, 531 (8th Cir.2003), that a liable party cannot bring an action under § 107 "remains viable for those parties which still have recourse to relief under § 113").

*Morrison Enterprises, LLC v. Dravo Corp.,* 638 F.3d 594, 602 -604 (8th Cir.2011).

This Court has previously held that Plaintiff has stated a claim against Defendants under CERCLA.  The Complaint alleges that all  Defendants knew, since at least 2001, that there were disposed hazardous materials on the property. Plaintiff further alleges that Defendants engaged in deliberate disturbance, unearthing, spilling, moving and re-releasing all of the enumerated hazardous materials and compounds into the property.  Although the Complaint did not specifically list each Defendant by name in its CERCLA Count, it alleges that all defendants engaged in the activities such that Defendants were put on notice that Plaintiff seeks recovery for their involvement in the disturbance, etc. of hazardous materials on the property.

- 24 -

> Liability for the release of hazardous substances may be imposed on ""any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.'" *Gurley*, 43 F.3d at 1192 (quoting 42 U.S.C. § 9607(a)(2)).  When considering an individual's liability as an operator, "'[i]t is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme.'" *Id.* (quoting *United States v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 743 (8th Cir.1986)).

*K.C.1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 1020 (8th Cir. 2007).

EOI seeks recovery from Plaintiff and Cross-Defendants for contribution for any responsibility they may have for the dissemination of hazardous materials and the resulting elimination thereof.

At this stage of the proceedings, whether or not the parties are responsible is not the issue.  Rather, the Court's task is to determine whether a cause of action has been stated.  While Plaintiff argues that it is entitled to be dismissed because of the Lender Liability Act, and therefore would have no CERCLA liability, EOI contends that Plaintiff may be responsible by reason of the subsequent actions it took with respect to the property.  While discovery may reveal that Plaintiff and Cross-Defendants had no authority to control the handling of the hazardous material on the property, the issue before the Court at this stage is whether the Complaint sufficiently alleges control.  Under the standards articulated herein, the Court concludes that the Counterclaim and Cross-Claims meet the *Twombly* and

*Iqbal* standards of alleging facts sufficient to place the parties on notice of the CERCLA claim against them..

**Count II-Missouri Contribution and Indemnity against Plaintiff, Clayton and Geotechnology**

As EOI correctly observes, Plaintiff, Clayton and Geotechnology have failed to provide any basis upon which the Court should dismiss the Missouri Contribution Count in the Counterclaim and Cross-Claim.  Under the pleading standards discussed herein, these counts sufficiently notify Plaintiff and the Cross-Defendants of the claims against them such that they can respond.  These counts set out, through incorporation, the factual basis upon which EOI claims the parties are responsible for contribution and/or indemnification.  Under *Twombly* and *Iqbal*, these counts pass scrutiny.

<u>Conclusion</u>

The Counterclaims and Cross-Claims sufficiently allege the claims EOI makes against Plaintiff and Cross-Defendants.  The motions to dismiss these claims will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Counts I, II, III, IV, and VII of the Counterclaim filed by Environmental Operations, Inc.,

(EOI), [Doc. No. 62], is denied.

IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Counts V and VI of the Counterclaim filed by EOI, [Doc. No. 63], is DENIED;

IT IS FURTHER ORDERED that Defendant Geotechnology, Inc.'s Motion to Dismiss Counts I and II of EOI's Cross claim, [Doc. No. 65], is DENIED;

IT IS FURTHER ORDERED that Defendant The Clayton Engineering Company's Motion to Dismiss Counts I and II of EOI's Cross claim, [Doc. No. 66], is DENIED.

Dated this 7th day of November, 2012.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE